### CENTRAL LIGHTING CO. v. NORTHERN LIGHT CO. et al.

#### (Circuit Court, E. D. New York. May 2, 1905.)

PATENTS—INFRINGEMENT—GAS BURNERS.

The Denayrouze patent, No. 673,705, for an improvement in Bunsen burners for incandescent gas lights, which consists substantially in surmounting the tube of such burner with a mixing-chamber having a height approximately equal to the height that would be assumed by the dark inner core of a flame issuing from said tube, and expanding to a diameter equal to the greatest diameter of such flame, and closing the top of the chamber with a gauze screen, an ordinary mantle being placed above the chamber, must be limited to a structure having a chamber of a conoid shape, as described in the original specification and in prior foreign patents embodying the invention in which the shape is explicitly claimed, and is not infringed by the use of a cylindrical chamber; nor are the claims which include as an element a chimney substantially inclosed at its bottom to prevent a material direct access of air infringed by a burner having a chimney mounted on a gallery perforated with a large number of holes for the admission of air.

In Equity.

Briesen & Knauth (Antonio Knauth, of counsel), for complainant.
Joseph L. Levy (O. Ellery Edwards, Jr., of counsel), for defendants.

THOMAS, District Judge. The bill is filed to enjoin the infringement of letters patent No. 673,705, issued to Louis Denayrouze, of France, May 7, 1901, upon an application filed July 8, 1897. The patent relates to improvements in Bunsen burners for incan-

descent gas lights. The letters state that the object of the patent is to obtain, by the patentee's improvements in gas burners with refractory mantles, such as the Welsbach mantles, a more brilliant light with a smaller consumption of gas, and that the result is effected by supplying to the mantle an intimate mixture of gas and air prepared by novel means.

The diagrams accompanying the letters are as follows:

## The specification states:

"My invention is based upon a discovery which I have made resulting from a study of the flames of Bunsen burners. Referring to Fig. 1,. which shows an ordinary Bunsen burner and the flame issuing from the tube, T, thereof, it is seen that this flame expands toward the middle of its height and terminates in a point at its top. In the center of the body of the flame is a relatively dark bluish-green conical core, a b c, having for its base substantially the opening of the tube, T, and varying in height with the length of the tube, and approximately of the same length as the tube. Around the dark core is a brighter zone, a d d c, confined by a translucent surface of rotation of a conoid form, its length depending on the length of the blue core. The dark core, a b c results from an incomplete mixture of the gas and the air which it draws with it, and this mixture is incomplete from the base of the flame to the level of a plane, x y, at about the top of the dark core. The mixture of gas and air becomes more and more intimate as it rises from the base of the flame to the level, x y. I have found that if the mixture is not permitted to burn until reaching this level, x y, where it becomes complete, and if only the portion above this plane acts on the incandescent mantle, the illuminating power of the mantle, with a given consumption of gas, is

augmented from three to four times. To attain this remarkable result in the construction of a practical incandescent burner, I inclose the portion, a x y c, of the flame in an envelope, forming a chamber, which I will call the 'mixing-chamber,' which chamber has a height equal, or approximately so, to that of the dark core, a b c, and which expands from the diameter of the tip of the Bunsen tube, T, to a cylindrical diameter equal, approximately, to the full diameter of the flame shown in Fig. 1, and I prevent any ignition of the gases while flowing through this chamber by covering over the top thereof with a screen of gauze of sufficiently fine mesh. Thus the flame is limited to the portion above the level, x y, and has no dark or nonluminous core corresponding to that shown in Fig. 1, with the result that the heating effect of the flame thus restricted is so augmented and concentrated upon the mantle which incloses this flame that its illuminating effect is multiplied to three or four times that which is ordinarily obtained from the same amount of gas.

"Fig. 2 shows one mode of applying my invention in connection with an incandescent burner, T being, as before, the induction tube or injector of an ordinary Bunsen burner, and K being the mixing-chamber, t being the gauze screen closing its top, and M designating the Welsbach mantle. The mixing-chamber preferably has a contour corresponding to that of the lower part. a d d c, of the flame in Fig. 1, or of gradually increasing area of cross-section from its bottom upward; but this is not essential, as it may be given a cylindrical form. Its cylindrical diameter at top should, however, at least equal the greatest diameter of the flame in Fig. 1. It thus has a height at least equal to or approximating that of the dark core, a b c, of such flame, as clearly indicated in Fig. 2, where, by way of illustration, this core is reproduced from Fig. 1, it being, however, understood that, in fact, there is no flame or ignition within the chamber, K, but that the dark core shows the proper quantity and position of the unmixed gases, gradually tapering centrally as the gases rise and become more intimately mixed, attaining complete homogeneousness at the apex of the core, and that the flame is confined to the space above the gauze, t, and within or against the mantle, M. The mantle may be suspended in any ordinary manner—as, for example, by a rod, q, fastened by a set-screw to the side of the chamber, K.''

The specification further describes means for decreasing or increasing the space in the mixing-chamber, and states:

"The tube, T, and chamber, K, may be permanently connected by soldering or by forming them in one piece; but where the burner is to be used with gas under varying pressures it is desirable that the chamber should be adjustable in height, and to this end I form it with a socket or neck, e, fitting over the tube, T, and adjustably fastened thereon by a set-screw, v, so that the entire chamber may be set higher or lower to accommodate it to different pressures. When the whole device acts with a chimney, as hereinafter stated, the admission of air and its velocity may be varied by raising or lowering the chamber, K, which permits the point of the core of unmixed gas to be kept a little beneath the gauze, t, and the base of the mantle."

The specification then states:

"My burner, in which the gas and air issue in a condition of perfect mixture, will burn without a chimney. In most cases, however, I prefer to use a chimney, in which case I arrange it so that its base is closed, or substantially so, in order that the suction due to the chimney shall act mainly upon the air entering through the holes, o o, of the Bunsen burner, so as to further improve the mixture of gas and air and increase the velocity thereof beneath the mantle. Fig. 3 shows one suitable means for applying such a chimney or globe. The chimney, C, is placed upon a closed socket, B, connected in a practically airtight manner to the chamber, K, so that little or no air can enter the chimney except through the Bunsen burner. Thus the air is drawn in forcibly through the holes, o, and the mixture effected in the chamber, K, is more perfect, while the velocity of the issuing gases is increased.

"The application of aspiration of air in the Bunsen apparatus by a chimney, as in Fig. 3, causes a rapid heating of the socket, B, by conduction, so that it may be used as a regenerator, as shown in Fig. 4. The socket is there shown provided with a regenerating chamber, F, and a partition, h. The bottom of the socket, B, has oblique holes, f, which direct the external air against the chamber, K. The air passes along the outer surface of the chamber, the partition, h, still following the chamber, so that the air passes out at i to the whole circumference of the lower end of the mantle, M. This heated air completes the combustion of the particles of gas traversing the meshes of the mantle incompletely burned, and thus the incandescence of the mantle is intensified."

The application as originally filed makes no reference to foreign patents, except that in the oath it is stated:

"That the said invention has been patented in France, No. 259,985, of 4th of September, 1896; in Belgium, No. 123,759, of 20th of September, 1896; in Austria, No. 46–4466, of 4th of November, 1896; in Italy, No. 42,772, of 4th of October, 1896; and that no patent on said invention has been granted to him, or to any other person or persons with his knowledge or consent, in any country other than those herein above named."

Reference may be had to the French patent for the purpose of discovering the scope of the patent in suit. This patent, after stating the object to be attained and the beneficial result, states:

"As a result of this observation, I devised, as shown in figure 2, the surrounding of the outer surface, the zone, AB, XY, by a solid (imperforate) envelope or chamber, K, following practically the shape of the flame, and having, as will be understood, its upper edge at the level of the apex, Z, of the dark cone in the plane, XY. On top of this sort of preparatory chamber, I place a Welsbach burner, M (by burner the patentee means mantle) or one of this type. * * *

"In order to obtain the proper direction, care should be taken that the chamber, K, while being substantially of the external shape of the ovoid (flame-body) below the plane, XY, should be slightly contracted in volume at its base, and spread gradually and become cylindrical toward its upper edge, in the neighborhood of XY.

"In this manner the good mixture, leaving the chamber at the level, XY, and coming from a core of elastic gases, the streams of which are slightly deviated toward a vertical direction by means of this little correction of the form which they would have taken of themselves, then conforms extremely well to the well-known shape of the mantles on the market."

The claims of the French patent are as follows:

"(1) The combination with an ordinary Bunsen burner of an additional chamber made of metal or other resistant material, the essential and distinctive double characteristic of which is: First, that it should extend in height from the orifice of the tube to at least the level of the interior blue cone of the flame, which the Bunsen burner would give if properly adjusted and burning free; and, second, that it should follow the ovoid form of the flame, contracting the same, up to the said level, the orifice of said chamber being provided with a metallic netting at the place where the mantle fits the same.

"(2) The adaptation of this additional chamber to the tube of a Bunsen burner to form a part thereof, or the adjustment of this chamber by means of a sleeve, so as to enable its position to be regulated so that its extremity will always be on the level of or slightly above the interior blue cone of the flame, at which level the conditions of thorough mixture, of pressure, and of velocity are best fulfilled."

The bill charges the infringement of each of the 15 claims of the patent in suit, but the brief waives infringement of all claims except

1, 2, 3, 7, 8, 9. For the present the discussion is confined to claim 1, which is as follows:

"(1) The combination with a Bunsen burner of a mixing-chamber surmounting the tube thereof, having a height approximately equal to the height that would be assumed by the dark core of a flame issuing from said tube, and expanding to a diameter equal to the greatest diameter of such flame, and a gauze screen covering the top of said chamber, said chamber being free from any obstruction to the vertical flow of the gases, whereby the flame is confined to the space above said gauze and the flame is solid or devoid of a dark core."

It is obvious that the patentee, in fact, found that the mixing-chamber should be large enough to envelop the core and the flame surrounding it, and, lest it should too much exceed such core in height, he directed that the mixing-chamber should have approximately the height of the core; and, lest it should too much exceed the flame in diameter, he directed that it should have a diameter equal to the diameter of the flame. The French patent, and the application as originally filed in the United States, show that the patentee intended to make the shape of the mixing-chamber a part of his invention. The French patent states that the chamber, K, shall follow "practically the shape of the flame"; that it shall have "its upper edge at the level of the apex, Z, of the dark core in the plane, XY"; that "care should be taken that the chamber, K, while being substantially of the external shape of the ovoid (flame-body) below the plane, XY, should be slightly contracted in volume at its base, and spread gradually and become cylindrical towards its upper edge, in the neighborhood of XY." The claim states as among the essential characteristics:

First, "that it [the additional chamber] should extend in height from the orifice of the tube to at least the level of the interior blue cone of the flame;" and,

Second, "that it should follow the ovoid form of the flame, contracting the same, up to the said level."

In the application first filed in the United States the shape of the mixing-chamber is carefully preserved, both in the description and claim 1. The file wrapper shows that all the claims were rejected, and that after some further proceeding the application was amended by erasing the entire specification and claims, except the signatures and signing clause, and that in the substituted specification and claims no change pertinent to the question of dimensions and form is noticed, except the statement in the specification that the mixing-chamber may have a cylindrical form is made in substantially the language now appearing in the specification as above quoted. The date of the amendment does not appear, but the letter of the attorney accompanying it is dated December 3, 1898, and other pertinent papers are dated in September. Hence it is concluded that it was not until the fall of 1898 that the patentee made any specific claim to a mixing-chamber of a cylindrical form.

In view of this history, it is concluded (1) that the patentee in his original application did not contemplate a cylindrical chamber, such as the defendants use, but rather a chamber substantially as described therein; (2) that the conception of a cylindrical chamber

was suggested by the patentee in the fall of 1898. What, effect does this conclusion have upon claim 1? It shows that the patentee filed an application for a mixing-chamber of a prescribed shape; that in the shape the invention in part resided; and that he asked to obtain a patent coincident in this respect with the French patent. The patentee must be charged with unduly broadening the invention in the Patent Office, or claim 1 must be confined to a chamber of the shape specifically described. The last alternative is consonant with the language, spirit, and description of the French patent and of the United States application as originally filed. It seems illogical and unjust to hold that the patentee may in specific language claim for a mixing-chamber of designated contour, and thereupon contend that such shape was not an essential of his patent, in order to accuse of infringement one using a cylindrical mixing-tube, and base such accusation upon an amendment to the specification made over a year after the application was filed, and in antagonism both to the original application and the foreign patent, which it is alleged to embody. And then, too, the evidence tends to show that the defendant Alton had, before the time of the amendment, devised a cylindrical sliding mixing-chamber, in general accordance with that now alleged to be an infringement. But without passing upon Alton's contention, the facts presented enforce the conclusion that the first claim is limited to the shape described, and that the defendants by using a cylindrical mixing-chamber do not infringe it. Greene v. Buckley (C. C. A.) 135 Fed. 531. The second claim differs from the first in the provision for a mantle, and as to that the same conclusion is reached. The third claim differs from the first in the provision for a "chamber adjustably attached to said tube so as to be adjustable vertically thereon." If the conclusion reached as to the first claim is correct, the third claim is not infringed. The complainant's brief waives infringement of the remaining claims, except 7, 8, and 9. The ninth claim falls under the same conclusion, and is also subject to the discussion of claims 7 and 8, which may now be had.

Claim 7 provides for (1) a Bunsen burner having a mixing-chamber, (2) a mantle, (3) a chimney inclosing said mantle, substantially closed at its bottom to prevent any material direct access of air, and to substantially confine the entering air to that which passes through the Bunsen burner, and of relatively large diameter to form an expansion-chamber, adapted to permit the burning gases to expand laterally through the mantle, and continued upward to form a draft-tube of reduced diameter adapted to cause a strong suction acting to draw the gaseous products from said expansion-chamber, and to draw a mixture of air and gas through the Bunsen burner.

Claim 8 provides for (1) a Bunsen burner, (2) a mixing-chamber, (3) a mantle, (4) a chimney of relatively large diameter inclosing said mantle, having an elongated draft-tube of reduced diameter forming an upward continuation of said chimney, said chimney being proportioned relatively to the mantle to afford an extended free space above the mantle and between it and the base of said

draft-tube, and to form an expansion-chamber adapted to permit the burning gases to expand laterally through the mantle, and substantially closed at its bottom to prevent any material direct access of air such as to impair such lateral expansion, and to substantially confine the entering air to that which passes through the Bunsen burner.

It is understood that this claim is practically the same as claim 7, except that it emphasizes the expansion-chamber relatively to the mantle.

Claim 9 is understood to be like claim 8, except that it provides for a mixing-chamber "of a height approximately equal to the height that would be assumed by the dark core of a flame issuing from such burner, and expanding to a diameter approximately equal to the greatest diameter of said flame, with a gauze screen covering the top of said chamber."

The defendants' burner shows a chimney inclosing the mantle, not "substantially closed at its bottom to prevent any material direct access of air and to substantially confine the entering air to that which passes through the Bunsen burner," but shows in the gallery that supports the globe some 51 holes of approximately $^3/_{32}$ of an inch in diameter. The combined area of these holes constitutes a large opening into the gallery, and it is not understood how it can be reasonably asserted that a construction showing such area of opening falls within the limits of claims 7. 8, and 9. Tuttle, the complainant's expert, states that he closed the holes in defendants' burner without injury to the illumination. but that certain further enlargement thereof did effect impairment of the light.

This evidence simply illustrates that a chimney not "substantially closed at its bottom" is as useful as one "substantially closed," and that a burner in this respect quite different from that described in the claim will cause or permit as desirable light. The fact that defendants' burner causes as perfect combustion and as high degree of illumination as the complainant's does not prove that the former burner is covered by the claim. The complainant's patent does not cover perfection of illumination, but rather specific means for producing it. Therefore, for the reasons stated it is concluded that the defendants' burners do not infringe any of the claims, and it is not necessary to pass upon the question whether infringement is absent on account of such variation as there may be between the height and diameter of the defendants' mixing-chamber relatively to the height of the inner core and the diameter of the surrounding flame, as illustrated by the experiments of Tuttle and the experiment in open court. But respecting the dimensions of the mixing-chamber pointed out by the patentee, it may be justly said that the patentee's directions for dimensions furnish a useful guide. What rights he gained it is not necessary to decide. The bill is dismissed entirely upon the ground of noninfringement, because the claims are limited to the specific form and arrangement of parts described in the claims.